IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARIO HARRIS                                                      PETITIONER

v.                                                      No. 4:16CV207-SA-JMV

EARNEST LEE, ET AL.                                          RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Mario Harris for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural
limitations and additional procedural changes were added in 1966. The scope of the
writ, insofar as the statutory language is concerned, remained essentially the same,
however, until 1996, when Congress enacted the Antiterrorism and Effective Death
Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners
and setting out special, new *habeas corpus* procedures for capital cases. The changes
made by the 1996 legislation are the end product of decades of debate about *habeas
corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of

the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held

by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct.

582, 588, 59 L. Ed. 969 (1915).

## Facts and Procedural Posture

Mario Harris is in the custody of the Mississippi Department of Corrections and is currently

housed at Mississippi State Penitentiary in Parchman, Mississippi. Mr. Harris was convicted of

murder (Count I) and drive by shooting (Count II) in the Circuit Court of LeFlore County, Mississippi.

He was sentenced to serve a term of life in Count I and thirty (30) years in Count II, to be served

consecutively in the custody of the Mississippi Department of Corrections as a habitual offender under

Miss. Code Ann. § 99-19-81. S.C.R., Vol. 1, pg. 51. This sentencing order was later amended to run

the sentences concurrently with each other. S.C.R., Vol. 1, pg. 60.

Mr. Harris appealed his convictions and sentences to the Mississippi Supreme Court, which

assigned the case to the Mississippi Court of Appeals. In his appellate brief, he raised the following

grounds for relief through counsel:

    I.    The trial court erred by allowing the introduction of gruesome photographs
that were unnecessary and prejudicial against Harris.

    II.    The trial court erred in denying Harris' motion for a new trial because the
verdict was against the overwhelming weight of the evidence.

III.  Whether there was cumulative error that deprived Appellant of his right to a fundamentally fair and impartial trial.

The Mississippi Court of Appeals affirmed Harris' convictions and sentences.  *Harris v. State*, 188 So.3d 601 (Miss. Ct. App. 2016) (Cause No. 2014-KA-01398-COA).

Mr. Harris filed an application in the Mississippi Supreme Court seeking permission to proceed with a motion for post-conviction collateral relief in the trial court.  In his application, he raised the following grounds for relief *pro se,* as summarized by the court:

I.  Fatally defective indictment for failure to comply with U.C.C.C.R. 7.06 because Harris should have been charged under drive by shooting statute, Miss. Code Ann. § 97-3-109, with regard to the murder victim Cornelius Banks instead of being charged with murder under Miss. Code Ann. § 97-3-19.

II.  Ineffective assistance of trial counsel for failure to file a motion to dismiss for speedy trial violations.  Also ineffective assistance of appellate counsel for failure to address trial counsel's decision not to pursue the speedy trial claim.

III.  Ineffective assistance of appellate counsel for failure to seek discretionary review.

IV.  The testimony of Mr. Harris' accomplices was impermissible because:

(A) They were not informed that their testimony could be used against them or that they could choose not to testify;

(B) Tims was never severed and Johnson was severed the day of trial;

(C) Neither had pleaded guilty or been to trial prior to testifying; and

(D) Both had been given bail.

V.  Prosecutorial misconduct for stating in closing that the accomplices would plead guilty and receive sentences for their part in the crimes.

VI.  The trial judge erred in denying Harris' motion for directed verdict with regard to Count II.

VII.  The conviction and sentence for murder are unconstitutional because he should have been convicted of second-degree murder, Miss. Code Ann. § 97-

3-19(1)(b), which was in effect as of sentencing but not at the time of the crime.

VIII.    Jury instructions S-1, S-6A, D-8, and D-9 were improper.

The Mississippi Supreme Court denied Harris' application, holding in relevant part:

In his application, Harris argues that he is entitled to post-conviction collateral relief because: (1) his indictment was improper; (2) his convictions were against the overwhelming weight of the evidence; (3) the testimony of his alleged accomplices was constitutionally infirm; (4) several jury instructions were defective; and (5) he received ineffective assistance of trial and appellate counsel. After due consideration, the panel finds that (1) - (3) are barred by res judicata and/or lack an arguable basis. Regarding (4), the panel finds that Harris's claim is waived and/or barred by res judicata.  As to (5), the panel finds that Harris fails to meet the requisite prongs of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).  Accordingly, the panel finds that this application should be denied.

Exhibit B.[1]

Mr. Harris filed a petition for a writ of *habeas corpus* in this court under 28 U.S.C.A. §2254,

raising the following grounds, as summarized by the court:

Ground One:    The indictment was fatally defective because Harris was indicted under the wrong statute

Ground Two:    Ineffective assistance of trial counsel for failure to raise a speedy trial issue and of appellate counsel for failure to challenge trial counsel's decision not to raise a speedy trial issue. Ground Three:  The testimony of Harris' accomplices was impermissible.

Ground Four:    The trial judge erred in denying Harris' motion for directed verdict with regard to Count II.

Ground Five:    Ineffective assistance of appellate counsel for failing to seek discretionary review.

Ground Six:    Harris' conviction and sentence are unconstitutional because he was not convicted under the second degree murder statute.

---

[1] The exhibits referenced in the instant memorandum opinion may be found attached to the State's motion to dismiss.

Ground Seven: Jury instructions S-1, S-6A, D-8 and D-9 were improper.

For the reasons set forth below, Mr. Harris is not entitled to *habeas corpus* relief based on these claims.

Mr. Harris has exhausted his state court remedies as to the issues raised in the instant petition and that any further return to the state court on these issues would be futile. A summary of the evidence will clarify the issues in this case.

### Summary of Testimony and Evidence

In the very early morning hours of November 8, 2011, the Greenwood Police responded to a drive-by shooting. S.C.R., Vol. 4., pg. 371. There were several victims of gunshot wounds, including Jared Moore, who had been wounded. *Id.* at 372. In addition there was a black male, later identified as Cornelius Banks, found shot and killed. *Id.* Dr. Michael LeVaughn testified that Banks was hit by two bullets, one in his foot and one his head, and was killed by a bullet that entered behind his left ear and exited at his right ear. *Id.* at 442. Officer Rodney Spencer, saw a Grand Marquis fleeing the scene of the shooting at high speed and pursued. *Id.* at 399. When the car hit a dead end, it stopped, and four to five men in dark clothing jumped out and fled. *Id.* at 400. An SKS rifle and a .380 pistol were found on the seat of the abandoned Grand Marquis. *Id.* at 403. Police also found shell casings for the SKS rifle in the vehicle. S.C.R., Vol. 5, pg. 460.

Police located suspect Alfred Lacy, a.k.a. Cali, that night in a nearby residence, laying under the covers with a toddler sitting on top of the bed. S.C.R., Vol. 4, pp. 417- 418, and Vol. 5, pg. 451. Police determined that the Grand Marquis was registered to Maurice Tims. S.C.R., Vol. 5, pg. 458. In addition, fingerprints were lifted from the abandoned Grand Marquis, including one from the front passenger window. *Id.* at 465, 492. Mike Hood, a latent fingerprint examiner for the Crime Lab testified that the print from the front passenger window was "identified as the right middle fingerprint

of Mario Pierre Harris." *Id.* at 507.

Maurice Tims, the owner of the Grand Marquis, testified that he drove the car during the shooting. *Id.* at 540. According to Tims, Harris and Michael Johnson, who were later joined by Lacy, flagged him down and asked for a ride. *Id.* at 544, 546. Tims testified that Harris sat in the front passenger seat and had a rifle. *Id.* at 547. Tims claimed that he was forced to drive around the block until some people came outside, and then Harris and the other began shooting. *Id.* at 553-555. Tims acknowledged that he had been charged with the murder and drive-by-shooting, as well, and testified that he had not been promised anything in exchange for his testimony. *Id.* at 567-568. Michael Johnson, another accomplice, also testified. According to Johnson, he ran into Tims, Harris, and Lacy, who were already in the Grand Marquis, and got in the car with them. S.C.R., Vol. 6, pp. 617-619. Johnson also testified that Harris was in the front passenger seat and had a rifle. *Id.* at 623-625. According to Johnson, Harris and Lacy shot the victims. *Id.* at 634. Johnson also testified that he was charged with the murder and the drive-by-shootings and had not been promised anything in exchange for testifying. *Id.* at 644. Mario Harris' mother, however, alleged that, at the time of the shootings, he was at her house, intoxicated. *Id.* at 680-681.

The jury found Harris guilty of murder and drive-by-shooting. S.C.R. Vol. 7, pg. 796. The State moved to sentence Harris as a non-violent habitual offender under Miss. Code Ann. § 99-19-81. *Id.* at 802. At sentencing, the State introduced certified copies of files in Leflore County Circuit Court Cause No. 23926, where Harris was convicted of the burglary of a dwelling and sentenced to a term of five (5) years with four (4) years suspended and (1) year of house arrest. *Id.* The State also introduced certified copies of files in Leflore County Circuit Court Cause No. 2009-0001, where Harris was convicted for possession of a firearm by a felon and sentenced to a term of ten (10) years with three (3) to serve and seven (7) to be served on post-release supervision. *Id.* at 803. He was sentenced to a

term of life as a non-violent habitual offender in Count I and a concurrent term of thirty (30) years as a non-violent habitual offender in Count II.  *Id.* at 815.

## The Doctrines of Procedural Default and Procedural Bar

Mr. Harris' allegations in Ground Seven were found to be procedurally barred by the Mississippi Supreme Court on state post-conviction collateral review.  If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding.  *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).  Similarly, federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision."  *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012).  Thus, a federal court may not consider a *habeas corpus* claim when, "(1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds."  *Maples v. Thomas*, —— U.S. ——, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted).  This doctrine is known as *procedural bar*.

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law."  *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983).  A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed."  *Ake v. Oklahoma*,

470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644

(5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support

his allegations with new, reliable evidence – that was not presented at trial – and must show that

it was "more likely than not that no reasonable juror would have convicted him in light of the

new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

The Mississippi Supreme Court held, "Regarding (4) [Harris' challenge to the jury

instructions], the panel finds that Harris's claim is waived and/or barred by res judicata." Exhibit B.

Mr. Harris did not raise this claim on direct appeal, and the state court found it to be barred under

Miss. Code Ann. § 99-39-21(1).[2] The Fifth Circuit has acknowledged that § 99-39-21(1) is an

independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). A bar is

adequate if the State strictly and regularly applies it. *Id.* However, the petitioner "bears the burden of

showing that the state did not strictly or regularly follow a procedural bar around the time of his

appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims

identical or similar to those raised by the petitioner himself." *Id.* Mr. Harris has not made this

showing of "inconsistent and irregular" application of the bar, and has, therefore, defaulted his federal

claims in state court. *Id.* at 861.

He has not shown cause to excuse his default, as he has not provided proof of something

external to him that prevented him from raising the issue on appeal (such as interference by officials or

the unavailability of the factual or legal basis for the claim). *Coleman v. Thompson*, 501 U.S. 722, 111

---

[2] Section 99-39-21(1) of the Mississippi Code reads:

Failure by a prisoner to raise objection, defenses, claims, questions, issues or errors
either in fact or law which were capable of determination at trial and/or on direct
appeal, regardless of whether such are based on the laws and the constitution of the
state of Mississippi or of the United States, shall constitute a waiver thereof and shall
be procedurally barred, but the court may upon a showing of cause and actual
prejudice grant relief from the waiver.

S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991); *McClesky v. Zant*, 499 U.S. 467 (1991). Neither will application of the bar result in a fundamental miscarriage of justice because Mr. Harris has not shown – with new and reliable evidence not available at trial – that he did not commit the crime of his conviction. *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Such evidence must show that it was "more likely than not that no reasonable juror would have convicted [Harris] in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). For these reasons, Mr. Harris' claims for relief in Ground Seven of the instant petition must be dismissed as procedurally barred.

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One through Six on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's

claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas corpus* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Two, Three, Four, Five, and Six of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Ground One:  Harris Was Indicted Under the Wrong Statute**

In Ground One, Mr. Harris argues that his indictment was fatally defective – that he should have been charged with drive-by-shooting in both counts as opposed to one count of drive-by-shooting and one count of murder.  He was indicted for:

(1)  the murder of Cornelius Banks pursuant to Miss. Code Ann. § 97-3-19(1)(b)[3] (Count I);

(2)  the drive-by-shooting of Jared Moore pursuant to Miss. Code Ann. § 97-3-109[4] (Count II);

(3)  the drive-by-shooting of Carlos Jones pursuant to Miss. Code Ann. § 97-3-109 (Count III);

(4)  the drive-by-shooting of Marquazy Gray pursuant to Miss. Code Ann. § 97-3-109 (Count IV);

(5)  the drive-by-shooting of Artex Gray pursuant to Miss. Code Ann. § 97-3-109 (Count V); and

(6)  the drive-by-shooting of Rodera Hunt pursuant to Miss. Code Ann. § 97-3-109 (Count VI).

S.C.R., Vol. 1, pg. 2.  At the close of the State's case in chief, the State moved to dismiss Counts 3, 4, 5, and 6, and the trial court granted the motion.  S.C.R., Vol. 7, pg. 669.

---

[3]  The indictment mistakenly lists Miss. Code Ann. § 97-3-17 (the excusable homicide statute) but tracks the language of Miss. Code Ann. § 97-3-19(1)(b) (the depraved heart murder statute).  This is an obvious typographical error.  The indictment reads, in relevant part, that Harris:

> did unlawfully, willfully and feloniously, without the authority of law, kill Cornelius Banks, a human being, during the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life although without premeditated design to affect the death of any particular person:  to wit[] driving by in a vehicle and shooting guns into a group of people who were standing along a street ...

Likewise, at the time of Mr. Harris' conviction, Miss. Code Ann. § 97-3-19(1)(b) read:  "(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: … (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual..."  The indictment tracks the language of the depraved heart murder statute.

[4]  This statute reads, "(1) A person is guilty of a drive-by shooting if he attempts, other than for lawful self-defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle."

The court lacks jurisdiction over this issue because Mr. Harris not alleged the deprivation of a federal constitutional right. The sufficiency of a state indictment is not a matter for federal *habeas corpus* review unless the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994) (citing *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir. 1993). The only defects the court can discern in the relevant count of the indictment are two typographical errors: the incorrect statute number and using "to with," rather than "to wit."

At the time of Mr. Harris' conviction and sentencing, Rule 7.06 of the Uniform Circuit and County Court Rules specifically addresses the required elements of an indictment:[5]

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
>
> 1. The name of the accused;
>
> 2. The date on which the indictment was filed in court;
>
> 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
>
> 4. The county and judicial district in which the indictment is brought;
>
> 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
>
> 6. The signature of the foreman of the grand jury issuing it; and

---

[5] Effective July 1, 2017, after Mr. Harris' conviction and sentencing, the criminal portion of the Uniform Rules of Circuit and County Court Practice were replaced by the Mississippi Rules of Criminal Procedure. Rule 14.1 of the Mississippi Rules of Criminal Procedure now governs the contents of an indictment. *See* Miss. R. Crim. P. 14.1.

7. The words "against the peace and dignity of the state."

The court on motion of the defendant may strike from the indictment any surplusage, including unnecessary allegations or aliases.

MS URCCC 7.06; *see Caston v. State*, 949 So. 2d 852, 856–57 (Miss. Ct. App. 2007).

A review of the indictment charging Mr. Harris shows that it complied with the requirements of Rule 7.06. S.C.R., Vol. 1, pg. 2. While Banks was killed as a result of the drive-by-shooting, the very fact that he was killed qualifies that crime to be charged as depraved heart murder. The typographical errors in the indictment do not affect its validity, as the language in Count I tracks the charge of Harris' conviction: depraved heart murder.

In addition, the trial court made clear during jury selection that the charge in Count I was murder:

> And in this case the defendant, Mr. Mario Harris, has been charged with two charges, the first being murder, and the second being drive-by shooting. It is alleged that on or about November 8, 2011, here in Leflore County, that Mr. Harris, during the commission of an act which was imminently dangerous to others and an act that evinced a depraved heart, regardless of human life but without premeditation. And what he is accused of doing is driving by in a vehicle and shooting guns into a group of people who were standing around a street in Count 2.
>
> …
>
> And on this charge the result was he is alleged to have killed Cornelius Banks.

Doc. 10-2 at 82-83. Further, the charge of murder is mentioned throughout the trial, by the court, the prosecutor, and defense counsel. *See, e.g.,* Doc 10-4 at 57 (opening statements); Doc. 10-6 at 150 (closing arguments); Doc. 10-7 at 2 (closing arguments); Doc. 10-7 at 4 (closing arguments); Doc. 10-7 at 47, (reading of the verdict); Doc. 10-7 at 52, 55, 57, 64, 66 (sentencing); Doc. 10-10 at 67 (jury instructions). If Mr. Harris or his counsel had harbored any doubt as to the charge in Count I, then they had many opportunities to voice their objections. This ground for relief is wholly without merit.

For these reasons, the state court's holding that this claim lacked merit was neither contrary to,

nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence presented. Mr. Harris is not entitled to *habeas corpus* relief as to Ground One.

### Grounds Two and Five: Ineffective Assistance of Counsel

In Grounds Two and Five Mr. Harris claims that trial and appellate counsel offered ineffective assistance during his criminal proceedings. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733

(2011).

**Ground Two:  Ineffective Assistance of Trial Counsel and**
**Appellate Counsel for Failure to Raise a Speedy Trial Issue**

In Ground Two, Mr. Harris argues that trial counsel was constitutionally ineffective for failing

to raise a speedy trial issue – and that appellate counsel was constitutionally ineffective for failing to

challenge trial counsel's decision not to raise this issue.  Mr. Harris is simply mistaken in this

assertion.  On August 10, 2012, Harris' trial counsel, Tucker Gore, moved for a speedy trial in this

case.  S.C.R., Vol  1., pg. 8.  On January 28, 2013, an order for continuance was entered – an order

drafted by trial counsel.  *Id.* at 16.  On March 7, 2013, the defense again moved for a continuance,

stating "due to the seriousness of the charge, additional time is needed in order[] to review the

voluminous discovery, meet with Defendant to review same, investigate, interview witnesses and

prepare for trial."  *Id.* at. 18.  On July 18, 2013, the trial court entered an order setting trial "[u]pon

agreement of all parties" for October 28, 2013, which was the date on which Harris' trial began. *Id.* at

21.  Hence, though Mr. Harris' trial counsel initially moved for a speedy trial, the delay in this case

appears to have been at the request of the defense in order to fully prepare Mr. Harris' case.  Trial

counsel is not constitutionally ineffective for choosing not to pursue a course of action contrary to the

interests of his client.  Attorneys are not required by the Sixth Amendment to file meritless motions.

*United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5th

Cir.1990).

Likewise, appellate counsel cannot be considered ineffective for choosing not to pursue this

issue on appeal.  Appellate counsel has broad discretion in determining which issues are more likely to

be successful – and thus need not raise every "colorable" claim on appeal.  *Jones v. Barnes*, 463 U.S.

745, 751-754 (1985).  Trial counsel determined that he needed more time to prepare for Mr. Harris'

murder trial – and requested or acquiesced to multiple continuances to ensure he was ready to proceed. The record shows that he was extremely well-prepared at trial, though ultimately unsuccessful in obtaining an acquittal. The prosecution's case was strong, and defense counsel chose the dual strategy of stressing the absence of forensic evidence (e.g., fingerprints) – and attacking the credibility of cooperating witnesses. Both strategies are valid – and require intimate knowledge of the case. Appellate counsel would have been ill-advised to pursue a speedy trial claim on the facts of this case.

Hence, the state court was correct in finding that Harris had failed to demonstrate that either his trial or his appellate counsel was constitutionally ineffective. The state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Mr. Harris is not entitled to *habeas corpus* relief as to Ground Two.

**Ground Five: Ineffective Assistance of Appellate Counsel
for Failing to Seek Discretionary Review.**

In Ground Five, Mr. Harris argues that appellate counsel should have pursued discretionary review in the Mississippi Supreme Court. This ground for relief is also governed by the standard set forth in *Strickland, supra*. On April 12, 2016, appellate counsel filed a timely "Motion for Enlargement of Time Within Which to File a Pro Se Motion for Rehearing." In that motion, appellate counsel stated, in relevant part:

> Appellant's counsel on appeal has reviewed said opinion and does not intend to file a Motion for Rehearing. As Appellant may desire to pursue this matter pro se, the undersigned respectfully requests this Honorable Court to grant Appellant a reasonable time to prepare any such pro se motion.

*Id.* Counsel served Mr. Harris with a copy of this motion. *Id.* On April 12, 2016, a clerk's notice was entered granting an extension of time until April 26, 2016, to seek rehearing in Harris' case. Exhibit

D. Mr. Harris did not seek discretionary review, and on May 3, 2016, the mandate issued. Exhibit E. A criminal defendant has no constitutional right to discretionary appeals and no right to counsel in such appeals. *Jackson v. Johnson*, 217 F.3d 360, 365 (5th Cir. 2000) ("a criminal defendant has no constitutional right to counsel on matters related to filing a motion for rehearing following the disposition of his case on direct appeal"); *Moore v. Cockrell,* 313 F.3d 880, 882 (5th Cir. 2002) (there is no right to counsel for discretionary reviews in state court).

As such, Mr. Harris has failed to demonstrate the deprivation of a constitutional right. Further, after deciding there would be no merit in seeking rehearing, appellate counsel secured time within which Mr. Harris could do so on his own, and he chose not to. Therefore, the state court was correct in holding that appellate counsel was not constitutionally ineffective in deciding not to seek discretionary review. This decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Mr. Harris is not entitled to *habeas corpus* relief as to Ground Five.

**Ground Three: The Testimony of Harris' Accomplices Was Impermissible**

In Ground Three, Mr. Harris argues that the testimony of his accomplices was improper because they had not been severed from his case and had not pled guilty at the time of his trial. This court may not review a claim challenging a state court's ruling on the admissibility of evidence under state law, as rulings of state courts on evidentiary matters are solely issues of state law. "A state court's evidentiary rulings present cognizable *habeas* claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994)). "[I]n reviewing state court evidentiary rulings, the federal *habeas* court's role 'is limited to determining whether a trial judge's

error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999). The "erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson,* 194 F.3d at 656.

In Harris' case, Maurice Tims and Michael Johnson testified for the State. Both had been accomplices in this case and had been indicted on charges of murder and drive-by-shooting along with Harris. In a pretrial motion hearing, the State noted "Maurice Tims and Michael Johnson, who are co-defendants that have been severed, would be witnesses for the State. . . " S.C.R., Vol. 2, pg. 17. Further, both men testified that they were charged with the same crimes as Harris and that they had not been promised anything in exchange for their testimony. S.C.R., Vol. 5, pg. 568 and Vol. 6, pg. 644.

Both Tims and Johnson were present at the time of the shooting and gave testimony regarding the shooting. Mr. Harris has not cited any authority supporting his allegation that this testimony was improper. Such "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir.1982) (collecting cases)." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Mr. Harris has not cited any authority in support of his claims; as such, he has not carried his burden of showing that a constitutional violation occurred. *See Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir.2000) ("The burden of proving that a constitutional violation occurred is, of course, on a habeas petitioner").

In any event, Mr. Harris has not shown that this testimony was impermissible or rendered his trial fundamentally unfair. Tims and Johnson were witnesses to the shooting. The trial court gave an instruction regarding accomplice testimony as to each witness:

In this case the State called as one of its witnesses, MICHAEL JOHNSON, an alleged accomplice. The Court instructs the Jury that the law looks with suspicion and distrust on the testimony of an alleged accomplice.

You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a Defendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond reasonable doubt. The fact that an accomplice has been found guilty of the offense charged is not evidence, in and of itself, of the guilty of any other person.

Doc. 10-10 at 84. The court gave an identical instruction as to Maurice Tims. *Id.* at 85. These instructions ensured that the jurors were well-aware of the weaknesses inherent in accomplice testimony. Further, during closing arguments, defense counsel repeatedly reminded the jury that Tims and Johnson were charged with crimes arising out of the shooting – and asked the jury to infer that, despite their testimony to the contrary, they anticipated receiving a benefit from testifying against Mr. Harris. Doc. 10-7 at 3, 5-11, 17-25. Indeed, counsel repeatedly stated that these two witnesses lied to help themselves in their own criminal cases. *Id.*

For these reasons, the state court's decision that this allegation lacked merit was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. Hence, Mr. Harris is not entitled to *habeas corpus* relief as to Ground Three.

### Ground Four: The Trial Judge Erred in Denying Harris' Motion for Directed Verdict Regarding Count II.

In Ground Four, Harris argues that the trial judge erred in denying his motion for directed verdict regarding Count II, the drive-by shooting of Jared Moore. On post-conviction collateral review, the state court treated this claim as a challenge to the weight of the evidence. "A federal *habeas* court has no power to grant *habeas* relief because it finds that the state conviction is against the 'weight' of the evidence . . . ." *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*,

476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986). The weight of the evidence is decided by the trial jury and, if found to be inadequate, the remedy is a new trial.[6] As such, to the extent this allegation is considered a challenge to the weight of the evidence, it is not a valid claim for federal *habeas corpus* review.

To the extent that this allegation is deemed a challenge to the sufficiency of the evidence, it is likewise without merit. A challenge to the sufficiency of the evidence can support a claim for *habeas corpus* relief only if the evidence, when viewed in the light most favorable to the State is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985). This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). The *Jackson* standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992). The only question when considering the sufficiency of the evidence is "whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct 2060, 2065, 182 L.Ed.2d 978 (2012), *see also U.S. v. Vargos-Ocampo*, 711 F.3d 508, 513 (5th Cir. 2013) (holding that, even if the evidence is in equipoise, the jury's decision controls unless it "was so insupportable as to fall below the threshold of bare rationality.")

---

[6] In contrast, however, the *sufficiency* of the evidence may be considered by a federal court on *habeas corpus* review, but only where the evidence, viewed in the light most favorable to the prosecution is such that no rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979). The sufficiency of evidence is challenged by a directed verdict or a JNOV and, if granted, results in a dismissal of the case.

In denying the defense motion for directed verdict, the trial court held:

> Looking at the evidence that has been presented in the State's case in chief in the light most favorable to the State at this point, the Court finds that the State has put forth a prima facie case as to both Count 1 and Count 2 of this indictment. They will not be dismissed at this point.

S.C.R., Vol. 6, pg. 669.

The record in this case easily supports this finding; the State presented ample evidence to support Harris' conviction in the drive-by-shooting of Jared Moore (Count II). Officer William Nevels testified that, after the shooting, "Jared Moore was standing in front of a car that was parked nearby. He was jumping up and down, yelling, 'I'm hit.'" S.C.R., Vol. 4, pg. 372. Officer Nevels also testified that Jared Moore was treated at the hospital for a gunshot wound to the leg . *Id.* at 385. The Crime Lab fingerprint analyst testified that Harris' "right middle fingerprint" was pulled from the passenger side window of the car used in the drive-by-shooting. S.C.R., Vol. 5, pg. 507. Maurice Tims and Michael Johnson both testified that Harris was in the front passenger seat during the shooting and fired the rifle at the crowd. S.C.R., Vol. 5, pp. 547, 555, and Vol. 6, pp. 623, 635. The trial court was correct to find that the evidence presented by the State, when taken in the light most favorable to the prosecution, established a prima facie case regarding the drive by shooting of Moore in County II, and warranted presentation of the charge to the jury.

As such, the state court's decision that this allegation lacked merit was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Mr. Harris is not entitled to *habeas corpus* relief as to Ground Four.

### Ground Six:  Harris' Conviction and Sentence Are Unconstitutional Because He Was Not Convicted Under the Second-Degree Murder Statute

In Ground Six, Mr. Harris argues that his convictions and sentences are unconstitutional because the State "failed to convict him under the 'second degree murder' statute." ECF doc. 1, pg. 13. Mr. Harris argues that, under this statute, his sentence should have been decided by the jury. He was charged with depraved heart murder under Miss. Code Ann. § 97-3-19(1)(b) and convicted by a jury. That statute was amended after Mr. Harris' conviction. Under Miss. Code Ann. §97-3-21(2), *as amended in 2013*:

> Every person who shall be convicted of second-degree murder shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict after a separate sentencing proceeding. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than twenty (20) nor more than forty (40) years in the custody of the Department of Corrections.

The amendment to the statute took effect on July 1, 2013. *Prior to this amendment*, Miss. Code Ann. § 97-3-21, provided that "[e]very person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary."

As such, the original version of this statute, prescribing a sentence of life, was in effect on November 8, 2011, when he committed the crime. That is the version which controls: "[T]he version of the statute in effect at the time an offense is committed will continue to control the defendant's prosecution and his punishment." *Wilson v. State*, 198 So.3d 408, 416 (Miss.Ct.App. 2016). Indeed, a state statute requires use of the original law in this situation:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

Miss. Code Ann. § 99-19-1. As such, the state court applied the correct statute during Mr. Harris'

sentencing, and this allegation is without merit.

For these reasons, the state court's holding that this claim lacked merit was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Mr. Harris is not entitled to *habeas corpus* relief as to Ground Six.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be dismissed. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 14th day of March, 2019.

  /s/ Sharion Aycock
U. S. DISTRICT JUDGE